TEICHNER *v.* POPE MANUFACTURING CO.[1]

MASTER AND SERVANT—WRONGFUL DISCHARGE—CONTRACT—CONSTRUCTION.

Plaintiff was engaged by defendant to manage a branch of its business for a year under a contract reserving to defendant the right to terminate such employment at any time "for conduct unsatisfactory to the officers of the company, or for other cause." Plaintiff was afterwards discharged, not because of any fault found with him or with his management, but because the company had abandoned another branch business, and its manager there had had much more experience than plaintiff, and it was thought advantageous to place him in charge. *Held,* that the discharge for the purpose of employing a man with more experience was within the terms of the contract.

Error to Wayne; Lillibridge, J. Submitted October 5, 1900. Decided October 31, 1900.

*Assumpsit* by Jacob F. Teichner against the Pope Manufacturing Company upon a contract of employment. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*Sloman & Groesbeck,* for appellant.

*Fred H. Warren,* for appellee.

HOOKER, J. The plaintiff was employed as manager of the defendant's bicycle business at Detroit, upon a sal-

[1] Rehearing denied February 27, 1901.

ary of $1,500 a year, commencing the 1st of January, 1898. His contract contained the following provision, upon which the defendant rests its right to discharge him, viz.: "We reserve, however, the right to terminate your employment at any time during the year for conduct unsatisfactory to the officers of the company, or for other cause." After working 22 days, he received notice that his services would be no longer required, from a Mr. Cox, who was defendant's manager of the sales department. At the same time he offered him the privilege of remaining in the capacity of salesman, a position that he had previously held, at his former salary of $100 a month, which offer the plaintiff accepted, and he continued in that capacity for a time. He was succeeded as manager by Mr. Poole, who had previously had charge of defendant's business at Milwaukee, which had been closed out. Some correspondence occurred, which was as follows:

"DETROIT, MICH., Jan. 21st, 1898.
"Mr. ALBERT L. POPE,
     "Secretary Pope Manufacturing Company,
          "Hartford, Conn.

"*My Dear Mr. Pope:* I wired you yesterday; also replied to your telegram advising you of my decision. Mr. Day's diagnosis was absolutely correct, and delay in the matter would be unwise in that, to say the least. Poole has been arranged with temporarily, and the other party will be subject to your decision after I reach Hartford. He is acting in the capacity of salesman during that time. I am writing this in great haste so as to catch the morning's mail.          Yours very truly,
                              "CHAS. B. COX.
     "I have to be vague at present in writing."

*Telegram:*   "DETROIT, MICH., January 20th, 1898.
     "To A. L. POPE, Secretary: Should make change at once. Man is honest, however. Suggest Poole temporarily.
                              "CHAS. B. COX."

*Telegram:*                                    "January 20, 1898.
"CHAS. B. COX,
        "Pope Manufacturing Company,
                "Detroit, Mich.:
"Do as you think best.   Poole's address, Milwaukee.
Wire decision.
                                    "ALBERT A. POPE."


*Letter:*                            "HARTFORD, January 20, 1898.
"Mr. CHAS. B. COX,
        "Detroit, Mich.
"*Dear Mr. Cox:* P.    *    *    *    P.    *    *    *    Your
telegram letter has also been received, reading: 'Should
make change at once.   Man is honest, however.   Suggest
Poole temporarily.'   We have wired you: 'Do as you
think best.   Poole's address, Milwaukee.   Wire decision.'
Signed 'Albert A. Pope.'
"I think, without doubt, that it is necessary that we
should make a change there, from what little I know about
it, as it does not seem to me that Teichner is the man to
meet the class of people we sell in Detroit.   I hope that
you are able to arrange matters and get hold of Poole as
soon as possible, so as to leave some one in charge to run
the place.   Poole was expecting to get through in Mil-
waukee Saturday, so as to be able to report here on
Monday; so that I think you will be able to get hold of
him without delay.   You are evidently ahead of your
route, as you are scheduled to be in Cincinnati today.   It
would seem to me necessary for you to stay there until
you had Poole established, but that I will leave to your
own judgment, as you are on the ground, and know better
than we do.   We also found that Teichner had raised one
of the salesmen's pay from $15.00 to $18.00 per week.
We have already written about this, and I think without
doubt you will find the letter there.   I know of no author-
ization giving him permission to do this.   Kindly investi-
gate that matter, and, if you find it is a fact that his pay
has been raised without authority, I would recommend
reducing it, if you think best.   As far as I can see now, it
would seem to me that possibly Poole might be considered
for the permanent manager there, but we can decide this
on your return.   We shall at once begin to make other
arrangements for the territory we had already assigned to
Poole.   P.    *    *    *    P.    *    *    *

"Trusting that you will get everything straightened out in good shape in Detroit, I remain,
                              "Yours truly,
                                    "A. L. POPE."

                              "DETROIT, MICH., Jan. 22, 1898.
"Mr. ALBERT L. POPE,
          "Secretary Pope Manufacturing Company,·
                    "Hartford, Conn.

"*My Dear Mr. Pope:* I have your letter of the 20th, and note its contents carefully. The action suggested by you regarding this branch has been taken, and I have this morning placed Mr. Poole in charge temporarily, retaining Mr. Teichner as salesman at his former salary, which is to begin next Tuesday, which is the end of the week, at his new rate. I deemed it expedient that I remain here in Detroit until this whole matter was cleared up, so will not go to Buffalo until tomorrow night, spending Monday in Buffalo, Tuesday in Pittsburg; then come back to Buffalo, and from there go to Hartford. I do not think it necessary to make any extended stay in Rochester, inasmuch as I carefully went over everything there last August, when Mr. Lisle took charge.

"Your remarks regarding the Metropolitan did not surprise me in the least, as I have seen from the start what the finish would be; and your father and Mr. Day will probably recollect the opinion I expressed last summer regarding conditions, just before Mr. Joyce took temporary charge.
                              "Respectfully,
                                    "CHAS. B. COX."

Plaintiff received wages at $100 a month until March 1st. On January 28th the defendant's secretary wrote Mr. Poole to notify the plaintiff that his services would not be required after February 7th, suggesting payment of his salary to that date, and to permit him to spend his time in finding a situation elsewhere. This was communicated to the plaintiff on January 31st. The plaintiff wrote Mr. Cox on the same day, asking that he intercede with the company to have him retained as salesman at $100 a month. The following is the letter:

"DETROIT, Jan'y 31st, 1898.
"Mr. CHAS. B. COX,
       "Pope Manfg. Co.,
              "Hartford, Conn.

"*Dear Sir:*  Was more than surprised this morning at receiving notice from Mr. Poole that by orders of the secretary my services at this branch be dispensed with after February 7th.  To a man of my years and standing in the community, such a peremptory dismissal comes a good deal like a fatal blow.  At least the reason for such a discharge is my due.  I supposed your offer to remain here as a salesman was made in good faith, and I wish to state that as such I would work conscientiously to the best of my ability to help Mr. Poole to make a success in the coming season, and I believe I could earn my salary. Will you have the kindness to intercede in my behalf? At this season of the year contracts have been made, and I would be at a great disadvantage in looking elsewhere.

"Hoping to hear from you very soon,
                   "I am, respectfully,
                          "J. F. TEICHNER."

On the same day Mr. Poole wrote the company, making a request that plaintiff be retained as salesman, at his former salary:

                     "DETROIT, MICH., Jan. 31, 1898.
"Mr. ALBERT L. POPE,
       "Secretary Pope Manufacturing Co.,
              "Hartford, Conn.

"*Dear Sir:* Your favor of Jan. 28th received.  In reference to Mr. Werbeck's salary, will state that, when Mr. Clark made arrangements with him, he was employed in a bank, and Mr. Clark agreed to raise his salary on January 1st to $1,000 a year.  On January 1st, as we understand it, Mr. Teichner wrote Mr. Cox regarding it, and seems made a personal letter of the matter, and no doubt but what this letter followed Mr. Cox around on his trip West.  Mr. Teichner, receiving no answer from Mr. Cox, came to the conclusion that there was no objection to the matter, and therefore raised Mr. Werbeck's salary to $18.00 per week, with the promise of, when business picked up, it would be increased to the rate of $1,000 per year, as per agreement between him and Mr. Clark when he came here to work.  We think Mr. Werbeck's services are worth this amount, and we respectfully request that

you will reconsider the matter, as we desire to keep him in our employ.

"We have notified Mr. Teichner, as per your request, today, that his services will not be needed after Feb. 7th. We understand that Mr. Cox had some talk with Mr. Teichner on this matter, and the understanding when Mr. Cox left was that he should remain here as salesman. Mr. Teichner has quite an extensive acquaintance here in Detroit, and possibly, if you have no objections, it might be well to keep him for the present. This is only a suggestion on our part, and, if you have any objections to our making any proposition of this kind, we shall not open up the matter with him.

"Yours truly,
"POPE MANUFACTURING CO.,
"JOHN L. POOLE, Local Manager."

On February 7th, Cox saw the plaintiff in Detroit, and he took the responsibility of asking plaintiff to remain as he had done, and said that he (Cox) would communicate with the company at Hartford, and endeavor to have him retained; and at that time both Cox and Poole suggested to the plaintiff that he write Col. Pope, the treasurer, about the matter, and he did so. He sent the following letter:

"DETROIT, MICH., Feb. 12, 1898.
"Col. GEO. POPE,
"Treasurer Pope Manufacturing Co.,
"Hartford, Conn.

"*Dear Sir:* At the suggestion of Mr. Poole, I take the liberty of addressing you with a letter pertaining entirely to myself; and in explanation thereof the matters which have been brought to your notice of the condition of affairs at the Detroit branch must be my excuse. Inasmuch as Mr. Poole is desirous of retaining me as salesman here, I bring the following to your notice, with the hope that it may count for something: Having been a resident of Detroit for 38 years, I naturally have a large acquaintance; and as for 17 years I was with the large jewelry house of M. S. Smith & Co., later F. G. Smith, Sons & Co., my acquaintance includes many of our best and influential people. I traveled 14 years for the Middletown Plate Company, Middletown, Conn., resuming at the jewelry house on the desire of my wife that I 'quit the

road.' When the firm failed, I secured a position with the Michigan Bell Telephone Company, and was with them at the time Mr. Clark enlisted my services for your company. Although new to the business, my sales for the season of '97 amounted to trifle over $14,000; not a poor record, with every transaction clean and straight. I worked in the position of manager for a little less than five months, and during that time heard no complaints of any kind from the factory. In fact, after four months of what might be called probation, I received my appointment as manager, to date from January 1st. You are familiar with what has occurred at the branch since then, and of my summary dismissal. You can understand that such treatment in a community where I am so well known must do me an irreparable injury, and I would therefore respectfully request my reinstatement, feeling confident that I can make myself worth my salary to the company. From Mr. Cox you will learn that I am in no way to blame for the condition found by him existing here, and I therefore beg of you to give this communication your kindly consideration, and trust that I may hear favorably from you.                    Very respectfully,
                              "J. F. TEICHNER."

Col. Pope responded as follows:

                    "HARTFORD, CONN., February 16, 1898.
"Mr. J. F. TEICHNER,
        "Pope Manufacturing Company,
                    "Detroit, Michigan.
    "*Dear Sir:* Your favor of the 12th inst. to our treasurer came duly to hand, giving us an interesting statement of your experience in business previous to the coming into employ of this company; also of the share you had in the business during the last year at the branch in Detroit. A letter written you by the secretary will, we think, cover the point to which you request our attention, and we trust will be satisfactory to you.
            "Yours truly,
                "POPE MANUFACTURING COMPANY,
                        "GEO. POPE, Treasurer."

A few days later he was shown the following letter by Mr. Poole:

125 MICH.—7.

"HARTFORD, CONN., Feb. 15, '98.
"Mr. J. L. POOLE,
          "Local Manager Pope Manufacturing Company,
                    "Detroit, Mich.
"*Dear Sir:* The secretary directs us to advise you that you are authorized to continue Mr. Teichner in your service as long as he discharges his duties satisfactorily and his sales are in accordance with what we deem a man of his ability should make. The salary that you will be allowed to pay Mr. Teichner will be $1,000 per annum, and his term of employment is terminable at the option of either himself or this company at any time.
                    "Yours truly,
                    "POPE MANUFACTURING COMPANY,
                         "CHAS. B. COX,
                              "Manager General Sales Dep."

After consulting counsel, he declined the offer, and told Mr. Poole that he had been advised that he could hold the company upon the original contract. He testified that in his letter to Col. Pope he had reference to his position as salesman. On February 17th, Poole wrote as follows:

"DETROIT, MICH., Feb. 17, 1898.
"POPE MANUFACTURING COMPANY,
          "Hartford, Conn.
"*Gentlemen:* Your favor in reference to Mr. Teichner's salary received today, and we immediately informed him that the company would pay him at the rate of $1,000 per year, and, in order that there might not be any misunderstanding, we allowed him to read the letter; and greatly to our surprise he informed the writer this evening that he had taken counsel, and states that his attorney informs him that, under the contract which he received as branch house manager in January, all he has to do is to present himself for duty each morning, and perform his regular duties to the best of his ability, and receive the regular salary mentioned in his contract; and that he proposes to stand on these grounds firmly, and, if necessary, sue you for the amount. We endeavored to talk him out of this position he has taken by telling him that his counsel must certainly have misinformed him. We are especially sorry over this, after doing what we have to persuade you to retain him in your employ, but in the future the writer will not try to help persuade you to retain any one

in your employ, no matter how good a man he may be. We demanded his key, which he has turned over to us, and shall await further information from you. Trusting that you will advise us promptly in reference to the necessary steps to take in this matter, we remain,

"Yours truly,
"POPE MANUFACTURING COMPANY,
"JOHN L. POOLE, Local Manager."

Subsequently Poole received the following letter:

"HARTFORD, CONN., Feb. 23, 1898.
"Mr. JOHN L. POOLE,
"Local Manager Pope Manfg. Co.,
"Detroit, Mich.

"*Dear Sir:* Your favor of the 17th inst. is duly received, relating to the position taken by Mr. Teichner. From the correspondence and reports in our possession regarding the Detroit branch, we find that, under date of January 21st, Mr. Cox, who was then in Detroit, wrote to this office, after recommending the removal of Teichner, and who, having been given authority to do as he thought best, says, 'Teichner will act in capacity of salesman until final decision.' Under the same date Mr. Cox also writes, 'Teichner is to remain as salesman at former salary, to begin January 25th, the end of the present week.' In a report of his visit to Detroit, dated January 28th, and probably made immediately after his return from your city, Mr. Cox says, 'On leaving Detroit, I directed Poole to dispense with the services of Mr. Teichner.' The rest of the correspondence regularly reinstating him at his former salary does not specially bear on the present situation. From all that we can gather, I judge that Teichner accepted the situation laid down for him on January 21st by Mr. Cox, and made no protests; also that he did accept the position of salesman at his former salary of $1,000 a year. Apparently, there was no correspondence or written agreements on this matter. If so, they are with your office; but we presume that it was all verbal, and, if it is as we understand it,—that is, Mr. Teichner did accept the position offered him as salesman at his old salary,—then he accepted his discharge as local manager.

"We notice that you have demanded his key, and, if he has not already notified you of his intention to resign his old position, you are hereby authorized to give him written

notice that his services are no longer required by this company, for after his present action we cannot retain him. If he presents himself, as he states it is his intention to do, each day, you should notify him that he is not considered in our employ. In all probability it would be well for us to write him a letter from here, giving him the reasons why he was removed as manager. His agreement with the company, or rather his letter from the company, as local manager, is precisely the same as yours, word for word, except the amount of salary. Just how your local city laws are on this matter we do not know here, but, if any serious trouble comes from this, it will, of course, be necessary to have an attorney to represent us in Detroit. Therefore we wish you to immediately consult one there, and advise us his opinion, and what course of action he advises you to take.

" Your letter of the 21st inst. in relation to the store is just received, and we will reply to it some time during the day.                    Yours truly,

"GEO. POPE, Treasurer."

The defendant offered testimony tending to show that the vice-president of the company visited Detroit early in January, and was not satisfied with the condition of the business, and that upon his report Cox visited the plaintiff, and investigated his affairs; that, while no question was raised affecting his honesty, his business was not satisfactory, and it was thought that he had not sufficient experience to conduct a successful business. His stock was in bad shape as to classification and arrangement; he had not taken an inventory when goods were turned over by his predecessor; a number of wheels were without accouterments, the same having been disposed of by Clark, his predecessor. Clark had made promises to exchange wheels upon terms which he had afterwards repudiated, and which the defendant would not have sanctioned, and there was much feeling among the patrons; and, although the plaintiff knew this, he had concealed, or at least not reported, it, although he had been asked for a report of the condition of the business, and for a plan of his business for the ensuing year, to be sent in by January 15th, which was not done. From this investigation Cox made the

change.    The plaintiff admitted some of the foregoing on cross-examination, though upon direct he testified that his stock and business were in good condition, and the discharge of his duties faithful.    His version of the transaction with Cox is as follows:

"I saw Mr. Cox on the morning of the 20th of January for the first time.    When he discharged me, he called me into the office, and Mr. Poole had arrived there that morning from Milwaukee, and he said that he regretted excessively to do what he was about to do, but that he was going to put Mr. Poole in charge of the branch.    I was very much surprised, and asked him, 'For what cause?' and he said: 'For none whatever.    Your services are perfectly satisfactory.    Everything has been all right.    There has been no fault found with your actions or management of the business.    But Mr. Poole has had a great deal more experience than you have had, and we have been obliged to close up the Milwaukee branch, and, as Mr. Poole has had greater experience, we have found it to our advantage to put him in charge of this branch.' I said: 'That is peculiar treatment for me to receive here, who have been living in the city all my life.    An act of that kind will reflect on me; it will hurt me.'    'Well,' he said, 'I am very sorry, but that is the only thing we can do.'    I said: 'This is most summary treatment, and I shall surely expect to hold you to the letter of your contract.    I shall not release you under these circumstances.' He said, 'You can remain here as salesman;' and, knowing that I was obliged to find some avocation, or something to do, I accepted the position.    I made the best that I could of it.    I might as well accept a position there as go elsewhere, which I told him at the time.    I accepted a position with the company after my discharge as manager, at a salary of $1,200.    I would have to go somewhere for a position, and I might as well accept it of him as go anywhere else.    I did not in any manner release the Pope Manufacturing Company of its obligations to me under that contract.    I remained with them up to the 29th of February, when I was discharged by Mr. Poole.    Mr. Poole conducted the management of the business after my discharge.    My claim is for the difference between $100 and $125 per month for a week in January, and February, and the month of March.    I had received three weeks' salary in January at the rate of $125 per month.    The

items were $25 for February, and $6.25 for January, and $125 for March. After I was finally discharged, I sought employment in several establishments where I was acquainted. Everything was filled. It was late in the season. I was unable to find any employment during the month of March."

Plaintiff's counsel concede that, if the conduct of the plaintiff was actually unsatisfactory to the defendant, it had a right to terminate the contract, and they admit that the reasonableness of the defendant's opinion of plaintiff's conduct cannot be considered. They claim, however, that they have a right to the exercise of good faith by the defendant, and they maintain that the defendant was not dissatisfied with the conduct of the plaintiff, and that he was not removed for that, or "for any other cause," but that the pretense that he lacked experience was a subterfuge, and that his removal was to make a place for Poole; and they claim that this was a question which should have been left to the jury. Plaintiff's contention is that defendant's right to terminate this contract is limited, and cannot be exercised in the absence of some conduct or cause proceeding from or growing out of his conduct or administration of his office; and his counsel insist that a desire to favor another is not a cause contemplated by the contract.

The learned circuit judge was apparently of that opinion, but held that there was no evidence tending to show that this was defendant's motive. All that can be claimed to show it is the testimony of the plaintiff, which we have quoted, as the other testimony indicates the contrary. Cox is alleged to have given the reason when he said: "Everything is perfectly satisfactory. Mr. Poole has had more experience than you have had. We are obliged to close up the Milwaukee branch, and, owing to his greater experience, we are going to put him in place of you." Instead of indicating that defendant's object was merely to make a place for Poole, it indicates that it was thought better for the business to have Poole manage

it, and that, and not a desire to find a place for Poole, led defendant to act. There is no testimony tending to show that it was merely to favor Poole.

Had the defendant a right to substitute a more experienced man? Clearly, it had if it was dissatisfied with the conduct of the plaintiff. It has offered proof that it was. But this is met by testimony in the nature of an admission by Cox, made at the time of the removal, which tends to show that it was not dissatisfied with plaintiff's conduct, though the admission plainly shows that the defendant preferred a man of more experience. The most that can be said of this removal in plaintiff's behalf is that it is a case of "not loving Cæsar less, but of loving Rome more;" in short, defendant's interests would be better subserved by substituting a more experienced man. If this was cause for terminating the contract within its terms, the court was right in directing a verdict; but, if not, the case should have been left to the jury to determine, not whether the plaintiff was reasonably qualified for the business, but whether the defendant discharged him by reason of dissatisfaction with his conduct of the business, or merely because it wished to favor another. It can hardly be said that the right to discharge when dissatisfied with conduct is limited to a case of immoral conduct on the part of the plaintiff. It certainly extends to the general conduct of the business as well. It covers incompetency, incapacity, and neglect. What is meant, then, by the words, "or for other cause?" We are of the opinion that a desire to discontinue or sell its business would be a sufficient cause; so would a desire to extend it beyond the capacity of the plaintiff to conduct; and it could hardly be said to be satisfied with the conduct of the business in such a case.

It may be said that this does not imply any misconduct or failure on the part of the plaintiff, or dissatisfaction with an existing business on the part of the defendant, but a mere desire to benefit itself by seeking to make better conditions already satisfactory, and that this is not

a cause within the terms of the contract. But does not this necessarily imply dissatisfaction with existing conditions, when we eliminate from the case the idea that the action of the defendant was based wholly upon a desire to favor another? Is it not a paradox to say that the defendant may remove plaintiff when dissatisfied with the business, but that it is not dissatisfied with the business done by plaintiff when it thinks another man can better it, while it believes the plaintiff cannot?

We are convinced that it was the intention of the parties that the right to terminate this contract when its interests required it should be given to the defendant, and that the evidence shows that its action was in good faith.

The judgment is affirmed.

The other Justices concurred.